ASOCIACIÓN DE ACADEMIAS Y COLEGIOS CRISTIANOS DE PUERTO RICO ET AL., apelados, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., apelantes.

*Número:* AC-91-478      *Resuelto:* 9 de agosto de 1991

*Julio Nigaglioni Arrache,* de *Ledesma, Palou & Miranda,* abogado de los apelantes; *Edric E. Vivoni Farage,* abogado de los apelados.

Sala Especial de Verano integrada por su presidente, el Juez Asociado Señor Rebollo López, y los Jueces Asociados Señora Naveira de Rodón y Señor Andréu García.

## RESOLUCIÓN

Evaluadas las mociones de los demandantes apelados en auxilio de nuestra jurisdicción, a la luz del escrito para mostrar causa presentado por la Universidad de Puerto Rico y considerando como circunstancias extraordinarias el que los siete (7) estudiantes codemandantes ya habían sido admitidos conforme a la sentencia de la cual se apela, y

que la proximidad del comienzo del año académico en las distintas instituciones universitarias de Puerto Rico habrá de dificultar, sino imposibilitar, la admisión de éstos por otras universidades, se accede a lo solicitado por dichos estudiantes y se ordena la admisión provisional de éstos a la Universidad de Puerto Rico hasta tanto otra cosa sea dispuesta por este Tribunal.

*Se ordena la notificación inmediata de la presente por la vía telefónica en adición al método ordinario.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió voto particular de conformidad.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto particular de conformidad emitido por el Juez Asociado Señor Rebollo López.

Expresaba recientemente una persona que "nuestro Puerto Rico era el mejor país del mundo". Cuestionada su asombrosa expresión por sus amigos —los cuales inmediatamente lo confrontaron con la obviamente deficiente, y continuamente decreciente, calidad de vida que sufrimos todos los que aquí vivimos— prontamente se reafirmó en su posición expresando que "definitivamente Puerto Rico tiene que ser el mejor país en el planeta *por cuanto aquí todo el mundo hace lo que le da la gana*". Los hechos que dan lugar al presente recurso constituyen evidencia fehaciente de la manera de actuar, y proceder, a la que se refería el mencionado ciudadano.

# I

En lo *pertinente* al recurso ante nuestra consideración, nuestro ordenamiento jurídico establece: que toda *institución educativa privada* en los niveles preescolar, elemental, secundario, vocacional, técnico o post secundario no universitario *que pretenda operar en nuestro País vendrá obligada a solicitar, y a obtener, una licencia del Secretario del Departamento de Instrucción Pública de Puerto Rico;* que *la facultad* del Secretario de Instrucción para emitir la referida licencia, o reconocimiento, es una *exclusiva* de éste, *no* teniendo ningún departamento, instrumentalidad, oficina, junta, negociado o comisión del Estado Libre Asociado de Puerto Rico, poder para hacer determinaciones, autorizaciones o acreditaciones de instituciones educativas *o para reconocer o acreditar grados, diplomas, certificados o cursos* expedidos por estas instituciones a sus estudiantes; que toda persona natural o jurídica que opere una institución educativa privada, a los niveles mencionados, sin la licencia del Secretario *incurrirá en delito menos grave;* y que el Secretario de Instrucción, en caso de que una institución persista o insista en operar sin licencia, luego de ser advertida sobre ello, podrá acudir al Tribunal Superior de Puerto Rico para obtener *una orden de interdicto* contra dicha institución educativa y sus funcionarios. *A esos efectos, véanse:* Ley Núm. 31 de 10 de mayo de 1976 y la Ley Núm. 49 de 30 de junio de 1988 (18 L.P.R.A. sec. 2101 *et seq.*).

A pesar de que el requisito de la obtención de la mencionada licencia es uno que está en vigor desde el año de 1976, la Asociación de Academias y Colegios Cristianos de Puerto Rico —*la cual organización agrupa unos doce (12) centros de educación elemental y secundaria que son operados por iglesias que profesan la fe bautista*— se ha negado consistentemente a solicitar la referida licencia del Secretario de Instrucción Pública. Su negativa se basa "en el

convencimiento teológico de que el Estado no puede controlar o dictarle pautas a una entidad que pertenece a Dios ...". En palabras sencillas, para dicha Asociación "permitir que el Estado apruebe, acredite o reglamente áreas sustantivas de sus iglesias-escuelas equivaldría a la aprobación, acreditación o reglamentación de su fe".[1]

Ello no obstante, la mencionada Asociación de Academias y Colegios Cristianos *no* realizó acción afirmativa alguna respecto a la referida legislación durante catorce (14) años; *esto es, de 1976 a 1990. En otras palabras, dicha Asociación no impugnó durante dicho período de tiempo la constitucionalidad de la misma ante los tribunales de justicia de Puerto Rico;* meramente se limitó a violar la referida legislación mediante la operación de escuelas, sin la debida licencia del Secretario de Instrucción Pública, durante catorce largos años.

Si sorprendente resulta ser la actuación de la Asociación de Academias y Colegios Cristianos, *verdaderamente asombrosa ha sido la actuación durante ese período de catorce años del Poder Ejecutivo de nuestro Gobierno*, el cual, como es sabido, tiene *la obligación legal* de poner en vigor la legislación que aprueba la Rama Legislativa de nuestro País. *El Estado nunca ha acudido a los tribunales de justicia de Puerto Rico para obligar a la mencionada Asociación a cumplir con la legislación en controversia.* Esto es, el Departamento de Justicia *nunca* ha intentado procesar criminalmente a ninguno de los funcionarios de la Asociación *como tampoco* el Secretario de Instrucción Pública ha tratado de ponerle fin a dicha ilegal actuación mediante la obtención de una orden de interdicto contra la referida Asociación.

*Pero, todavía, hay más.* Durante el antes mencionado período de catorce (14) años, la Universidad de Puerto

---

[1] Véase pág. 8 de la demanda radicada por la Asociación en el presente caso ante el tribunal de instancia.

Rico, en violación de las citadas Leyes 31 y 49, *le ha reconocido validez* a los "diplomas" de escuela superior que han expedido los diferentes centros de estudio que agrupa la referida Asociación *y ha venido admitiendo a la Universidad a los egresados de dichos centros de estudio;* ello, igualmente, *en violación* de las citadas Leyes Núm. 31 y Núm. 49.

De manera, pues, que tenemos que durante un período de catorce (14) años la Asociación de Academias y Colegios Cristianos y la Universidad de Puerto Rico continuamente han violado las disposiciones de la legislación en controversia, sin que el Estado haya hecho nada al respecto. Como decía nuestro amigo, "este es el mejor País del mundo".

## II

Finalmente, *en el año de 1991*, el Presidente de la Universidad de Puerto Rico, Dr. José M. Saldaña, decidió que "algo" tenía que hacerse al respecto. Escribió *una carta;* la misma dirigida al director *de uno de los doce centros* que agrupa la Asociación de Academias y Colegios Cristianos de Puerto Rico, esto es, al Colegio Bautista de Yauco.

En carta de fecha 29 de enero de 1991 —a pesar de "hacer claro" que, *en su opinión*, la Universidad de Puerto Rico no está "sujeta a la prohibición legal de reconocer diplomas otorgados por instituciones educativas que no posean la licencia del Departamento de Educación"— el doctor Saldaña *le informó* al Colegio Bautista de Yauco que la Universidad había decidido "exigir que los graduandos solicitantes provengan de aquellas [instituciones educativas] que posean dicha licencia *porque de esta manera se garantiza el cumplimiento de una serie de requisitos mínimos* ...". (Énfasis suplido.)

El doctor Saldaña en la referida carta, por último —*y convenientemente olvidándose de la omisión en que ha incurrido la institución que él dirige*— exhortó al Colegio

Bautista a tomar "las medidas pertinentes *a la brevedad posible* para que el Colegio ... obtenga la licencia que le exige la ley". Ello, conforme el doctor Saldaña, con el noble propósito de evitar que "jóvenes que aspiran a ser admitidos en [la] Universidad en el futuro o que deseen trabajar en alguna dependencia gubernamental se vean impedidos de ello *por la omisión de su institución educativa*". (Énfasis suplido.)

El 17 de mayo de 1991, la Asociación de Academias y Colegios Cristianos de Puerto Rico, en representación de los doce centros de estudio que agrupa, los directores de dichos centros, y siete estudiantes graduandos de dichos centros de estudio, representados por sus respectivos padres, radicaron ante el Tribunal Superior de Puerto Rico, Sala de San Juan, una demanda "sobre sentencia declaratoria, entredicho provisional, interdicto preliminar e *injunction* permanente", contra el Estado Libre Asociado de Puerto Rico, el Secretario del Departamento de Educación, el Secretario del Departamento de Justicia, y la Universidad de Puerto Rico, y su Presidente, el Dr. José M. Saldaña.

En la referida demanda, los centros de estudio demandantes alegaron, *en síntesis*, que el requisito de obtención de licencias, exigido por las citadas Leyes Núm. 31 de 1976 y Núm. 49 de 1988, viola la doctrina de separación de Estado e Iglesia por lo que el mismo resulta ser inconstitucional. Por su parte, los estudiantes demandantes alegaron que la actuación de la Universidad de Puerto Rico —según expuesta en la carta suscrita por el doctor Saldaña— violaba la cláusula constitucional sobre igual protección de las leyes y su derecho constitucional a recibir una educación.

El tribunal de instancia bifurcó las reclamaciones contenidas en la demanda radicada, atendiendo las de los estudiantes vía *injunction* preliminar y permanente y considerando las de las escuelas como una de sentencia

declaratoria. Luego de unos trámites procesales, que resulta innecesario enumerar, el foro de instancia dictó "Sentencia Parcial" con fecha de 25 de junio de 1991. La misma tuvo el propósito de resolver, con carácter prioritario, la reclamación de los estudiantes demandantes, esto es, "la legalidad del requisito de admisión impuesto por la U.P.R. ...".

En la sentencia parcial que dictara, el tribunal de instancia decretó que el referido requisito era inconstitucional. Ello por dos fundamentos, a saber: que dicho requisito viola la cláusula de igual protección de las leyes, y, que incidiendo el mismo "sobre un derecho constitucional fundamental, el derecho a la educación", el Estado no había podido demostrar un "interés apremiante". Ordenó, en consecuencia, que la Universidad de Puerto Rico admitiera a los siete estudiantes demandantes.

Inconforme, acudió el 16 de julio de 1991 la Universidad de Puerto Rico ante este Tribunal, vía la radicación de un "escrito de apelación o solicitud de revisión", imputándole al foro de instancia haber errado al resolver que el requisito en controversia es inconstitucional. Mediante Resolución de fecha 30 de julio de 1991, una "Sala Especial de Verano", compuesta por tres Jueces, le "dio curso" al recurso de apelación radicado, quedando en suspenso, en consecuencia, la orden de admisión emitida por el foro de instancia. En esa ocasión, el Juez suscribiente solitariamente hizo constar que "ordenaría, en auxilio de nuestra jurisdicción, la admisión provisional de los estudiantes recurridos a la Universidad de Puerto Rico, siempre y cuando cumplan con todos los demás requisitos de admisión, hasta tanto se resuelva finalmente la apelación entablada".

La parte demandante apelada prontamente radicó una "moción urgente en auxilio de jurisdicción y reconsideración". En la misma, *en lo pertinente*, nos informó que la Universidad de Puerto Rico, *con anterioridad a la fecha de radicación de su recurso ante este Tribunal*,

había ya aceptado a los siete estudiantes demandantes. Solicitaron que le permitiéramos a éstos, en auxilio de jurisdicción, comenzar sus estudios universitarios en la Universidad por cuanto ya ellos habían hecho todos los arreglos necesarios —económicos y de otra índole— para estudiar en la misma.

Mediante Resolución de fecha 2 de agosto de 1991 le concedimos término a la Universidad de Puerto Rico para que:

> ... se exprese sobre las alegaciones contenidas en dicho escrito y sobre el remedio que se solicita. En adición, deberá la Universidad de Puerto Rico informar a este Tribunal las razones que tuvo para no informar en sus escritos anteriores los hechos alegados por los apelados en la mencionada moción relativos a la admisión de éstos a dicha Universidad.

La comparecencia de la Universidad constituye prueba fehaciente adicional de que la delicada situación que se plantea en el presente recurso de apelación —*donde está en juego, entre otros, nada más y nada menos que el futuro profesional de cientos, o quizás miles de jóvenes puertorriqueños*— está siendo manejada por las personas con injerencia sobre la misma *de una manera superficial e insensible*; funcionarios y educadores que, *aparentemente, no les preocupa mucho el bienestar y el futuro de esos jóvenes ciudadanos.*

Nos informa la representación legal de la Universidad de Puerto Rico que efectivamente es cierto que la Universidad aceptó a los referidos demandantes como estudiantes para el próximo año universitario; que dicho hecho no fue informado a este Tribunal en el recurso que se radicara debido a que los abogados desconocían el mismo; que su desconocimiento se debió a "una aciaga falta de comunicación entre los suscribientes [los abogados] y el aparato burocrático de la U.P.R."; esto es, a "una falta de coordinación y comunicación entre los distintos apéndices de la U.P.R. ...".

Por otro lado, igualmente admite la representación legal de la Universidad de Puerto Rico, en la referida y hasta cierto punto desafortunada comparecencia, *que es cierto* "que en el pasado la U.P.R. había admitido estu diantes de escuelas no certificadas...". Argumentan, sin embargo, que ese hecho "de por sí no tiene *implicaciones legales* para este caso". Ello, conforme los abogados de la Universidad, debido a que la "admisión en el pasado de estos estudiantes *se debió a un error de interpretación,* pues la U.P.R. había interpretado que la Ley Número 49 ... le era inaplicable". (Énfasis suplido.)

La mencionada representación legal nos "informa", por último, que habiendo decidido este Tribunal acoger la apelación interpuesta por la Universidad, "la sentencia del Tribunal Superior no es final y firme", razón por la cual "durante el curso de esta semana se informará [por la Universidad] a los estudiantes que sus admisiones han sido revocadas".

### III

Independientemente de la *corrección jurídica* de la sentencia parcial dictada por el tribunal de instancia, cuestión sobre la cual no emitimos juicio en este momento; de si la *inercia, inacción, y omisión,* durante catorce largos años, tanto de los Departamentos de Justicia e Instrucción Pública del Estado Libre Asociado de Puerto Rico como de la Universidad de Puerto Rico constituyen, o no, razón legal suficiente para "eximir" a los estudiantes demandantes de la aplicación de las leyes en controversia; y del planteamiento técnico a los efectos de que el habérsele dado curso a la apelación radicada tiene el efecto de paralizar la sentencia dictada a nivel de instancia, razón por la cual la Universidad puede, por el momento, hacer caso omiso de la misma, *no podemos permanecer impasibles e insensibles ante la trágica situación por la que atraviesan las verdade-*

*ras víctimas de este desgraciado drama: los estudiantes egresados durante el presente año de las escuelas demandantes.*

La proximidad de la fecha del comienzo de los estudios en todas las instituciones universitarias existentes en nuestro país hace prácticamente imposible que estos estudiantes puedan aplicar, y ser admitidos, en otras instituciones universitarias privadas. De "revocarse" su admisión por la Universidad, el daño para dichos estudiantes puede ser irreparable. Su admisión y permanencia en la Universidad mientras se dilucida el recurso de apelación, por el contrario, no resulta en daño alguno para la Universidad.

No debemos olvidar —que no obstante la existencia de las Leyes Núm. 31 y Núm. 49, ante— que cientos, quizás miles, de estudiantes en igual situación han cursado estudios, y recibido diplomas de la Universidad de Puerto Rico, durante los últimos catorce años, con el beneplácito no sólo de la Universidad sino que de los Departamentos de Justicia e Instrucción del Estado Libre Asociado de Puerto Rico.

Luego de permanecer con los "brazos cruzados" por tantos años, realmente no entendemos la "urgencia" que ahora tiene la Universidad de Puerto Rico de que se observen al pie de la letra las disposiciones de la legislación en controversia.